**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GINA BERNACCHI,                    )

                                 )

              Plaintiff,          )

                                   )

         v.                           )       Case No. 1:23-cv-16091

                                   )

FIRST CHICAGO INSURANCE       )       Judge John Robert Blakey

COMPANY, and CHICAGO SEVEN CAB   )

INC.,                                )

                                   )

              Defendants.       )

**DEFENDANT FIRST CHICAGO INSURANCE COMPANY'S
OMNIBUS RESPONSE TO PLAINTIFF'S THREE DISCOVERY MOTIONS**

NOW COMES the Defendant, FIRST CHICAGO INSURANCE COMPANY ("Defendant"), by and through its attorneys, FREEMAN MATHIS AND GARY, LLP, and in response to Plaintiff's Motions to Overrule First Chicago' Production Response Claims of Privilege and to Overrule Objections, to Overrule First Chicago Insurance Company's Objections to Plaintiff's 30(b)(6) Notice, and to Overrule First Chicago Insurance Company's Objections to Plaintiff's Interrogatories and to Compel (Dkt. Nos. 44, 47, 51), states as follows:

**<u>INTRODUCTION</u>**

Contrary to the incorrect assertions made by Plaintiff, First Chicago responded to Plaintiff's Requests for Production has not "tendered **<u>zero</u>** documents." (Dkt. No. 44 at 2 PageID#385) (emphasis original). To the contrary, between February 6, 2025 and May 23, 2025 First Chicago has tendered over 6,000 pages to Plaintiff (including metadata where available in a load file) along with a detailed 41-page privilege log that expressly asserts the specific privilege as to each item withheld, describes the nature of the items withheld and identifies the document

type, subject, author, and recipients, as applicable in full compliance with the requirements of Rule 26(b)(5). (Dkt. No. 44-3 at PageID#: 416-456); Fed R. Civ. P. 26(b)(5).

In addition to being incorrect on the basic facts of the progress of discovery, by Plaintiff's own admission this lawsuit is a *breach of contract* claim. (Dkt. No. 1 at ¶ 3). In an effort to avoid the legitimate and appropriate assertions of privilege and to improperly broaden the scope of discovery under Rule 26(b)(1), Plaintiff attempts to recast her single-count breach of contract complaint as something it is not: a claim for bad faith under Section 155 of the Illinois Insurance Code. (*see e.g.* Dkt. No. 44 at 1 PageID #:384).[1]

As a threshold matter however, Plaintiff's discovery motions are premature and should be denied as she has failed to make good faith efforts to confer with First Chicago to resolve these disputes without Court intervention. Despite the clear requirements of Local Rule 37.2, Rule 37(a)(1), and this Court's own requirements, Plaintiff's counsel has on more than one occasion failed to make a good faith effort to meet and confer in the interest of resolving these discovery disputes without this Court's involvement. While the parties did speak prior to Plaintiff's filing of these successive discovery motions, Plaintiff was intent on simply "checking the box," so she could file the motions and was unwilling to engage meaningfully in any attempts to resolve these disputes and indeed would not even allow First Chicago to confer with its client and respond to her prior to filing her most recent motion pertaining to First Chicago's interrogatory responses. In fact, at the beginning of the most recent meet and confer call on July 29, 2025, Plaintiff's counsel

---

[1] Indeed, Defendant's fully briefed Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) is currently pending before this Court and therein Defendant argues that Plaintiff's claim is subject to dismissal for this very reason. (Dkt. No. 15).

stated that meet and confer calls "typically go nowhere." (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶ 15).[2]

First Chicago has appropriately asserted objections to Plaintiff's overly broad Rule 30(b)(6) notice that improperly seeks disclosure of a witness as to topics that have no relevance to Plaintiff's single-count breach of contract claim, improperly call for an interpretation of insurance policy language and thus seek a legal conclusion, seek information protected by the work product doctrine and attorney-client privilege, or are otherwise improper or incomprehensible. (*See e.g.* Dkt. No. 47-2 at PageID#: 484). Each of these objections appropriately seeks to limit the otherwise overly broad Rule 30(b)(6) notice consistent with the limitations of federal law.

Next, First Chicago has appropriately objected to Interrogatories one, two, and three as each seeks information that is beyond the scope of discovery under Rule 26(b)(1). Specifically, those interrogatories seek information that is not relevant to Plaintiff's single-count breach of contract claim or any party's claim or defense and thus is not subject to discovery here. (Dkt. No. 51-1 at PageID#: 509-510). Plaintiff also takes

Plaintiff's three motions (Dkt. Nos. 44, 47, and 51) are premature and seek to overrule valid objections to improperly broaden the scope of discovery and obtain disclosure of materials that have been appropriately withheld pursuant to a valid privileged and are thus not subject to disclosure under the law. Plaintiff's rapid-fire motions should be denied, and First Chicago should be awarded its reasonable expenses incurred in opposing the motion, including attorney's fees under Rule 37(a)(5)(B).

---

[2] In footnote 3 of Plaintiff's Motion to Overrule First Chicago Insurance Company's Objections to Plaintiff's Interrogatories and to Compel, Plaintiff doubles down on her unwillingness to confer in good faith and confirms that she was unwilling to even allow First Chicago a chance to respond to the questions she posed to it for the first time in the meet and confer on July 29, 2025.

## ARGUMENT

**I.**   **Plaintiff's Motions Fail to Comply with the Requirements of this Court, Local Rule 37.2 and Rule 37 and are Thus Premature and Should be Stricken.**

As a threshold issue, Plaintiff's participation in the meet and confer discussions with First Chicago can only be described as pro forma and does not meet the requirements of Local Rule 37.2, Rule 37, or this Court. As a result, Plaintiff's motions should be denied for this reason alone.

First, in her motion pertaining to First Chicago's production responses, Plaintiff generically refers to two "meet and confer" conferences, but fails to recite the date, time, and place of these conferences and fails to identify the names of all parties participating as is expressly required by Local Rule 37.2. (Dkt. No. 44). Further, the limited information provided about the conferences confirms that the conferences did not involve a specific discussion of the issues Plaintiff now asserts in her motion but instead were focused on Plaintiff's insistence that her single-count breach of contract claim should be interpreted as a claim under Section 155 of the Illinois Insurance Code. (Dkt. No. 44 at 2). Importantly, at no point has Plaintiff identified which of First Chicago's responses or objections to her Requests for Production she specifically takes issue with nor has she identified which specific assertion of privilege listed on the 41-page privilege log that she takes issue with. Instead, she generically demands that First Chicago withdraw its specific and enumerated assertions of privilege and that it remove all redactions included on the over 6,000 pages that have been produced. (Dkt. No. 44 at 15).

In Plaintiff's motion pertaining to First Chicago's objections to her 30(b)(6) notice (Dkt. No. 47) Plaintiff generically refers to "multiple meet and confer conferences," but again fails to recite the date, time, and place of these conferences and fails to identify the names of all parties participating as is expressly required by Local Rule 37.2. (Dkt. No. 47 at 2). Plaintiff attaches First Chicago's November 7, 2024 letter as an exhibit to her motion that specifically delineates and

provides further explanation for each of the initial positions that First Chicago took in response to her production requests and to her Rule 30(b)(6). Despite First Chicago's efforts to spell out its positions, during the parties' subsequent discussions Plaintiff was unwilling to meaningfully engage in discussions aimed at resolving specific issues with respect to particular discovery requests and assertions of privilege. Rather, and consistent with the motions, counsel for Plaintiff blankety asserts that First Chicago's assertions of privilege are improper. (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶¶ 12, 18). In contrast, counsel for First Chicago has worked diligently to produce thousands of pages spanning this dispute both pre-suit and for the years of litigation between the parties in both state and federal court.

Finally, after being served with First Chicago's responses to her Interrogatories on July 26, 2025, a mere two days later Plaintiff reached out to request a meet and confer relative to First Chicago's responses to her interrogatories already indicating her plan to file a motion pertaining to First Chicago's responses without any indication of what would be discussed at the meet and confer that had yet to occur. (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶¶ 13-17). On July 29, 2025, counsel for Plaintiff and First Chicago had a telephone conference to discuss Plaintiff's issues with First Chicago's responses to her interrogatories. *Id*. During that call, Defendant requested that Plaintiff articulate her issues with each specific interrogatory response. (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶ 16); *see also* July 29, 2025 Email, attached as Exhibit 2. Despite this request, Plaintiff instead posed six new questions that that differed from the interrogatories and provided no clarity as to what specific issues Plaintiff had with Defendant's responses to her interrogatories. *Id*. Defendant's counsel asked for the opportunity to address Plaintiff's new questions with their client and Plaintiff's counsel responded that he viewed these questions as "legal issues," and that First Chicago's response would not

change Plaintiff's plan to file yet another discovery motion. *Id.* The very next day Plaintiff filed

her motion to overrule First Chicago's objections to Plaintiff's interrogatories. (Dkt. No. 51).

Plaintiff's failure to comply with the requirements of Local Rule 37.2, and her

unwillingness to engage in a meaningful discussion of her position as to the issues she has with

First Chicago's responses to her various discovery requests and her all or nothing approach to

discovery is inconsistent with the requirements of this Court, the Local Rules, and the Federal

Rules of Civil Procedure and warrants the denial of Plaintiff's motions.

## II. Plaintiff's Motion Directed at First Chicago's Response to Plaintiff's Requests for Production Should be Denied.

First as noted above, and contrary to Plaintiff's misrepresentations to this Court, First

Chicago produced over 6,000 pages to Plaintiff between February 6, 2025 and May 23, 2025

(including metadata where available) along with a detailed 41-page Privilege Log. (Dkt. No. 44-

3). Next, First Chicago's assertions of the Work-Product Doctrine, the Attorney-Client Privilege,

and the Insurer-Insured Privilege apply in this case and support withholding the documents

delineated on the privilege log. Finally, First Chicago's redactions are appropriate and narrowly

tailored to shield privileged information from disclosure. As a result, Plaintiff's Motion to Overrule

First Chicago's Production Response Claims of Privilege and to Overrule Objections should be

denied.

Plaintiff attempts to mischaracterize First Chicago's responses in her motion as if it has

asserted a blanket claim of privilege and has refused to produce *any* documents on that basis. First

Chicago has not. Instead, and as confirmed by the 41-page privilege log and the attached affidavit,

First Chicago through counsel evaluated the responsive materials, applied redactions and withheld

specific documents on a document-by-document basis limiting the redactions and assertions of

privilege to the information and documents that are appropriately shielded from disclosure under

the attorney-client privilege, the insurer-insured privilege, and/or the work product doctrine. (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶¶ 4-7).

Plaintiff, by contrast, is requesting that this Court disallow First Chicago's assertions of the attorney-client privilege, the insurer-insured privilege, and the work product doctrine across the board. (Dkt. No. 44 at 15). Importantly, and as discussed above, at no point prior to filing her motion has Plaintiff identified the specific entries on the privilege log or specific redactions with which she takes issue. (*See* Affidavit of Donald Patrick Eckler, attached as Exhibit 1 at ¶ 18). Instead, in her motion directed at First Chicago's productions responses she complains about the words used to describe the items withheld and prematurely seeks to compel the disclosure of these materials without engaging in any meaningful discussion to evaluate the assertions of the respective protections. (Dkt. No. 44 at 3, 11, and 12). This approach is inconsistent with the requirements of this Court, the local rules, and the federal rules of civil procedure. Here, as confirmed by the attached affidavits, First Chicago's redactions and assertions of privilege are appropriate and thus, Plaintiff's motion directed at First Chicago's production responses should be denied.

### i. The Work-Product Doctrine Applies.

It is undisputed that documents prepared in anticipation of litigation are protected under the work product doctrine. Fed. R. Civ. P. 26(b)(3)(A). Further, materials prepared by agents for an attorney are likewise protected as if they were prepared specifically by the attorney. *United States v. Nobles*, 422 U.S. 225, 238 (1975). As the case law cited by Plaintiff confirms, where, like here, the materials sought to be protected were in fact prepared in anticipation of litigation, the work product protection applies and will shield those documents from disclosure. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). Plaintiff attempts to argue that

First Chicago is not entitled to the protections of the work product doctrine, but in doing so ignores the reality that the parties have been involved in litigation in multiple courts for years.

Plaintiff relies heavily on *Logan v. Commercial Union Insurance Company*, in support of her position. (Dkt. No. 44 at 5). This reliance is misplaced. Importantly, in *Logan* the court concluded that the documents were created in anticipation of litigation and were thus subject to protection under the work product doctrine. *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996). There the court stressed that "a naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications." *Id.* Ultimately, the court concluded that even where a claim of bad faith has been alleged - which is not the case here - "a mere allegation of bad faith is **insufficient to overcome the work product privilege.**" *Id.* at 977. (emphasis added).

Despite the holding in *Logan* and the reality that the allegations of Plaintiff's complaint are limited to a claim for breach of contract, Plaintiff goes on to discuss cases that focus their analysis on circumstances where bad faith is at issue, which is not the case here. Plaintiff then argues that she has a "substantial need" for the documents that have been withheld and "cannot obtain equivalent materials without 'undue hardship.'" (Dkt. No. 44 at 6). This claim rings hollow, especially since First Chicago has produced over 6,000 pages of documents along with a detailed privilege log and Plaintiff has not asserted that after her review of those documents that she is missing something necessary to prepare her case. Plaintiff here, is improperly attempting to use a generic request for Section 155 damages as a foothold to allow her to improperly embark on a "fishing expedition" into documents that have been appropriately withheld on the basis of privilege and the work product doctrine.

Plaintiff also relies on *Slaven v. Great Am. Ins. Co.*, for the generic and misleading proposition that the work product doctrine should not apply to documents created before the

insured is notified of a denial of a claim. (Dkt. No. 44 at 5); *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795–96 (N.D. Ill. 2015). This is an oversimplification of the analysis and holding in *Slaven*. The court in *Slaven* actually explains that legal opinions offered by counsel as well as draft letters exchanged prior to denial of a claim were protected by the attorney-client privilege and the work product doctrine. *Id*. 801-03. Here, and as set forth in the privilege log, the communications that have been withheld involve the legal opinions of counsel and should maintain their protections accordingly.

Ultimately, in *Slaven* the court stresses that privilege determinations "ought not to be made without the judge first reviewing the questioned documents *in camera*." *Id*. at 802. This point underscores the importance of the meet and confer process and how it is difficult if not impossible to review and evaluate Plaintiff's motion which attacks First Chicago's assertions of privilege across the board instead of on a document-by-document basis. Plaintiff cannot overcome the protections of the work product doctrine and her motion should be denied on this basis.

## ii. First Chicago's Communications with its Attorney's Sought Legal Advice and are protected by the Attorney-Client Privilege.

Plaintiff goes on to argue that the attorney-client privilege should also be set aside in its entirety and attempts to argue that the numerous attorneys involved throughout the long and litigious history of the relationship between these parties, were merely acting as "claims adjusters, claims processors, supervisors, or claims monitors." (Dkt. 44 No. at 9). This is simply not true. Instead, each of the attorneys involved provided legal advice to First Chicago and communicated with members of the control group pertaining to that advice in a confidential manner which has been permanently protected from disclosure. Specifically, with respect to each to of the below matters related to this dispute, counsel was engaged from the respective firms to represent First Chicago or its insureds:

9

a. 2019 CH 11876 (Circuit Court of Cook County) – *Bernacchi v. First Chicago and Chicago Sevan Cab* – Cynthia Ramirez and Thomas Finn, Leahy - Eisenberg & Fraenkel

b. 2019 L 1513 (Circuit Court of Cook County) – *Bernacchi v. Allen, et al* – Mike Mordini, Eli Vine, and Cameron Ash - Mordini, Schwartz, & Vine (DeJuana Pierce, Chris Barrett, and Patty Amdeio – legal assistants)

c. 21-cv-2533 (Northern District of Illinois) and 21-3363 (Seventh Circuit) – *Bernacchi v. First Chicago Insurance Company* - Patrick Hincks - Sullivan Hincks & Conway

In addition, John Heyl is a lawyer directly employed by First Chicago. Finally, Patrick Hincks acts as outside general counsel and on occasion represents the company (as he did in the prior dispute in federal court) as well as represents First Chicago insureds. (*See* Affidavit of Colleen Peslak, attached as Exhibit 3 at ¶¶ 5-6).

Plaintiff, in attempting to mischaracterize First Chicago's handling of her claim, also misapprehends the specific role of each of the attorneys involved in advising First Chicago relative on various legal issues. Each of the attorneys retained by First Chicago engaged in attorney-client communications with its control group that are protected from disclosure by the attorney-client privilege. First Chicago's privilege log appropriately describes the privileged communications between the members of its control group the attorneys retained. (*See* Dkt. No. 44-3 at PageID#: 416-456). First Chicago's verified response to Plaintiff's Interrogatory No. 4 confirms the identities of those individuals in the control group for First Chicago and in the interest of completeness First Chicago has attached an affidavit of First Chicago's Vice President of Claims, Colleen Peslak, which provides further support for its assertions of privilege. (*See* Affidavit of Colleen Peslak, attached as Exhibit 3 at ¶ 4). First Chicago has met its burden to establish that the documents withheld are protected by the attorney-client privilege and Plaintiff's blanket request to compel First Chicago to disclose these communications should be denied.

As a final point, Plaintiff also seeks the production of the entire file of three separate law firms relative to their representation of First Chicago, Defendant is not in possession of those records and even so anticipates that any records that might be obtained from each firm would be protected by the attorney-client privilege and to the extent any such records may include non-privileged documents that were not protected from disclosure, any such records likely already have been produced in this matter in the over 6,000 documents that were tendered to Plaintiff.

### iii. The Insurer-Insured Privilege Applies.

Finally, Plaintiff takes issue with First Chicago's assertion of the insurer-insured privilege and argues that no such privilege has been recognized under federal law. (Dkt. No. 44 at 10). This misleading assertion ignores Plaintiff's own acknowledgment that a federal court sitting in diversity evaluates the applicability and scope of a privilege based on the law of the forum state, here, Illinois. *Id.* Plaintiff's argument appears to suggest – without support – that the insurer-insured privilege that attached while First Chicago was engaged in handling the underlying third-party insurance claims somehow evaporates when Plaintiff files a breach of contract claim against First Chicago. In support of her position Plaintiff cites to a case that reviews the insurer-insured privilege under Indiana state law, which is entirely inapplicable here. (Dkt. No. 44 at 10; *citing Selective Ins. Co. of Am. V. Smiley Body Shop, Inc.*, 2016 WL 6277618, at *3 (S.D. Ind. Oct. 27, 2016)).

Even if this Court were to conclude that the insurer-insured privilege does not apply here, as set forth in First Chicago's privilege log there are only a handful of documents that have been withheld on that basis alone. (*See* Dkt. No. 44-3 at 1, 5, 12, 39). In any event, prior to filing her motions Plaintiff did not make a specific request to First Chicago asking that it withdraw its assertion of the insurer-insured privilege as to any particular documents.

11

### III.    Plaintiff's Motion Directed at First Chicago's Response to Plaintiff's Rule 30(b)(6) Notice Should be Denied.

First Chicago has appropriately asserted objections to Plaintiff's overly broad Rule 30(b)(6) notice that improperly seeks disclosure of a witness as to topics that have no relevance to Plaintiff's single-count breach of contract claim, improperly call for an interpretation of insurance policy language and thus seek a legal conclusion, seek information protected by the work product doctrine and attorney-client privilege, or are otherwise improper or incomprehensible. (*See e.g.* Dkt. No. 47-2 at PageID#: 484). Each of these objections appropriately seeks to limit the otherwise overly broad Rule 30(b)(6) notice consistent with the limitations of federal law.

In response to First Chicago's objections Plaintiff again attempts to recharacterize her Complaint as a bad faith claim under Section 155 in an effort to improperly broaden the scope of discovery in this case. Plaintiff also takes issue with First Chicago's objections that address the paragraphs of Plaintiff's Rule 30(b)(6) notice that include the word "facts," but in reality, are requesting the disclosure of a witness that will testify to legal conclusions. (*See e.g.* Topics 2, 7, and 12). Plaintiff then relates back to her motion pertaining to her requests for production and asks this Court to overrule First Chicago's objection to topics 4-6, 8, 12, 14, and 15 all of which improperly seek testimony pertaining to information protected by the work product doctrine and the attorney-client privilege. First Chicago reiterates its arguments above as to the appropriateness of the application of the work product doctrine and its assertions of the attorney-client privilege here.

Ultimately, First Chicago's objections are well-founded and appropriate given the overly broad scope of the topics included in Plaintiff's notice and the fact that these topics improperly seek the disclosure of a witness on topics that are not the subject of oral discovery. As a result,

Plaintiff's motion pertaining to First Chicago's response to her Rule 30(b)(6) notice should be denied.

**IV.      Plaintiff's Motion Directed at First Chicago's Response to Plaintiff's Interrogatories Should be Denied.**

While Plaintiff failed to identify her specific issues with First Chicago's responses to her interrogatories prior to filing her motion, she now takes issue with First Chicago's objections to Interrogatories 1 through 3. (Dkt. No. 51 at 2). Each of these objections is premised upon the limited scope of the allegations of Plaintiff's Complaint which alleges a single count for breach of contract and the reality that based upon what is alleged the information sought in Interrogatories 1 through 3 beyond the scope of discovery as set forth in Rule 26(b)(1).

Specifically, Interrogatories 1 and 2, seek the disclosure of information that is not relevant to her generically pled breach of contract claim. Put plainly, Plaintiff has never alleged a Section 155 claim and is seeking information that is not relevant to her breach of contract claim here. Plaintiff cites a case she refers to as *McGee v. First Chicago Fire & Cas. Co.*, the citation she provides 315 Ill. App. 3d 673 (2000), however actually bears the caption *McGee v. State Farm Fire & Cas. Co*. In any event, the *McGee* case focuses on a situation where the defendant is arguing that the cause of action under Section 155 does not remain viable because the defendant has discharged its contractual obligations through payment. *Id*. at 682. Whereas in this case, First Chicago's position is that Plaintiff has simply failed to allege sufficient facts to support the assertion of a Section 155 claim, as is spelled out more fully in the pending motion to dismiss. (Dkt. No. 15). As a result, the information sought in Interrogatory Nos. 1 and 2 is not relevant or discoverable and thus First Chicago's objections should be sustained and Plaintiff's motion should be denied.

Similarly, Interrogatory No. 3 likewise seeks the discovery of information pertaining First Chicago's compliance with 50 Ill. Adm. Code 919.50, which Plaintiff herself concedes that she does not seek the enforcement of through this lawsuit. (Dkt. No. 51 at 6). As above, the fact that Plaintiff has not and cannot assert a claim for a violation of Section 919.50 in this suit confirms that the information sought by this interrogatory is beyond the scope discovery in this case. Further, First Chicago's objection is well-founded as the interrogatory improperly seeks a legal conclusion as to compliance with Section 919.50. Thus, First Chicago requests that its objection to Interrogatory No. 3 be sustained and that Plaintiff's motion to overrule these objections be denied.

Plaintiff goes on to take issue with First Chicago's response to Interrogatory No. 4, which is responsive to the interrogatory and confirms that the individuals identified in First Chicago's privilege log were in the control group at the relevant time of the communications and were tasked with the decision-making pertaining to the various underlying claims at issue here. (Dkt. No. 51-1 at PageID#: 510). This response was verified by the Vice President Claims for First Chicago, Colleen Peslak (previously Litigation Director). *Id*. at PageID#: 511. Despite this verification, Plaintiff claims that First Chicago has not provided any information to establish that the specific individuals identified in the privilege log are within the control group. (Dkt. No. 51 at 9). In any event, and to avoid wasting this Cout or the parties time with this issue First Chicago has attached an affidavit of its Vice President of Claims, Colleen Peslak that further confirms that the individuals included on the privilege log were within the control group and thus the communications withheld, and the redactions made are appropriate. (*See* Affidavit of Colleen Peslak, attached as Exhibit 3 at ¶ 4).

**V.    Plaintiff's Request for Fees Should Be Denied and First Chicago is entitled to recover its fees pursuant to Rule 37(a)(5)(B).**

Finally, Plaintiff's request to recover fees should be denied in its entirety consistent with Rule 37(a)(5)(A)(i) – (ii) because Plaintiff filed its three discovery motions before attempting in good faith to obtain the discovery without court action and First Chicago's withholding of the specific documents and its responses and objections are substantially justified.

As discussed more fully above, Plaintiff's participation in the meet and confer discussions with First Chicago were not attempts to resolve these purported discovery disputes in good faith as the rule requires but were simply attempts to satisfy the requirement so that Plaintiff could file these motions. It is telling, that the "meet and confer" conferences that occurred did not involve a specific discussion of the issues Plaintiff now asserts in her motions and that First Chicago's offers for further discussions in an effort to resolve any issues were either ignored or refused altogether.

Additionally, and as discussed above First Chicago's objections and assertions of privilege, are substantially justified and appropriate given the limited scope of Plaintiff's Complaint and the expansive nature of the overly broad nature of Plaintiff's requests, interrogatories, and Rule 30(b)(6) notice.

Importantly, a review of First Chicago's responses to Plaintiff's production, its objections to Plaintiff's Rule 30(b)(6) Notice, and its responses to Plaintiff's interrogatories confirms that First Chicago constrained its objections and its assertions of privilege and the protections of the work-product doctrine consistent with what is appropriate under the law. Plaintiff's motions were not substantially justified and thus First Chicago is entitled to the reasonable expenses it incurred in opposing these motions, including its attorney's fees, pursuant to Rule 37(a)(5)(B). Fed. R. Civ. P. 37(a)(5)(B).

## **CONCLUSION**

Ultimately and despite First Chicago's willingness to resolve these discovery disputes (and indeed the case in its entirety), Plaintiff insists on continuing to waste this Court and First Chicago's time and resources by filing these premature discovery motions that should be able to be resolved between the parties or at the very least may be rendered moot by this Court's ruling on First Chicago's pending and fully briefed motion to dismiss. (Dkt. No. 15). First Chicago's responses and objections are supported by applicable law and thus Plaintiff's discovery motions (Dkt. Nos. 44, 47, and 51) should be denied and Plaintiff should be ordered to pay First Chicago's reasonable expenses incurred in responding to these three motions, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(B).

Respectfully submitted,

**FIRST CHICAGO INSURANCE COMPANY**

*/s/ Donald Patrick Eckler*
**One of its Attorneys**

Donald Patrick Eckler (ARDC No. 6282801)
**FREEMAN MATHIS & GARY, LLP**
33 North Dearborn Street, Suite 1430
Chicago, IL 60602
(773) 598-6989
patrick.eckler@fmglaw.com

16

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on August 22, 2025, a true and correct copy of the foregoing, **DEFENDANT FIRST CHICAGO INSURANCE COMPANY'S OMNIBUS RESPONSE TO PLAINTIFF'S THREE DISCOVERY MOTIONS**, was filed with the Court by electronic filing protocols and that the same will therefore be electronically served upon all parties and attorneys of record by operation of the efiling system or by electronic mail.


*/s/ Donald Patrick Eckler*

EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GINA BERNACCHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-16091 |
| | ) | |
| FIRST CHICAGO INSURANCE | ) | Judge John Robert Blakey |
| COMPANY, and CHICAGO SEVEN CAB | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DECLARATION OF DONALD PATRICK ECKLER**</u>

Under penalty of perjury as provided by law, the undersigned certifies pursuant to 28 U.S.C. § 1746, that the following statements are true and accurate, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that the undersigned verily believes the same to be true:

1. My name is Donald Patrick Eckler, I have personal knowledge of the facts stated in this Declaration, the basis of which is set forth more specifically below, and if called to testify to these facts, I would be competent to do so.

2. The information contained in this Declaration is based on my personal knowledge.

3. I am an attorney at Freeman Mathis & Gary, LLP and have been engaged to represent First Chicago Insurance Company in this matter.

4. Prior to responding to Plaintiff's Requests for Production in this matter, I and members of my firm reviewed the documents in the possession and control of First Chicago Insurance Company to identify all documents that were responsive to Plaintiff's Requests for Production.

5. During the course of our review, we identified specific documents and information that are protected from disclosure in this matter pursuant to the work product doctrine, the attorney-client privilege, and/or the insurer-insured privilege.

6. Consistent with the requirements of Federal Rule of Civil Procedure 26(b)(5) we prepared a privilege log expressly asserting the applicable protection, describing the nature of each

EXHIBIT 1

document withheld, the bates number(s), the subject, the author, the recipient, and identifying the specific privilege asserted.

7.  We have reviewed the documents that have been withheld or redacted in this matter and each of these documents or the specific redactions contain statements that originated in confidence that it would not be disclosed, was made to an attorney acting in his or her legal capacity for the purpose of securing legal advice or service, and has remained confidential.

8.  Where available and in the form of a load file with respect to the emails produced, we have produced the metadata that was received along with those responsive electronically stored documents. After the initial production of the hard copy claims file, the production of the emails, numbering over 6,000 pages was done over the course of several months and as documents were produced (or withheld) the privilege log was updated.

9.  On December 23, 2024, I had a telephone conversation with Plaintiff's counsel Kent Sinson. During that call we discussed the production requests, the preservation of the responsive documents and metadata, the individuals in the control group under *Kneif v. Sotos*, 181 Ill. App. 3d 959 (2nd Dist. 1989), attendance of a court reporter at the meet and confer, whether and when First Chicago completed its investigation and admitted or denied the claim, amended response to Request for Production No. 5, production of an affidavit to establish the privilege, and issues in the case that frame the scope of discovery.

10. On March 26, 2025, I had a call with Plaintiff's counsel Kent Sinson and we discussed the ongoing production of documents and that we would provide the remaining documents by May 9, 2025.

11. On June 25, 2025, I had a telephone call with Plaintiff's counsel Kent Sinson. During that call we discussed our objections to Plaintiff's Rule 30(b)(6) notice.

12. During that call Mr. Sinson referenced *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789 (N.D. Ill. 2015) and *Logan v. Com. Union Ins. Co.*, 96 F.3d 971 (7th Cir. 1996) and his position that there could be no assertion of privilege until a decision on liability and damages had been made by the insurer; a position with which I disagree. There was also a discussion of the nature of the complaint and the prior litigation between the parties, including the decisions in *Bernacchi v. First Chicago Insurance Company*, 42 F.4th 324 (7th Cir. 2022), *Bernacchi v. Illinois Department of Insurance*, 2024 IL App (1st) 231710, and *Wolf v. Riverport Insurance Company*, 132 F.4th 515 (7th Cir. 2024).

13. Prior to scheduling a call with Plaintiff's counsel to discuss our Interrogatory responses he had already indicated his intention to file a motion pertaining to those responses.

14. On July 29, 2025, I had a telephone call with Plaintiff's counsel, Kent Sinson.

15. During the call on July 29, 2025 Mr. Sinson stated that he meet and confer calls "typically go nowhere."

16. During the call on July 29, 2025 we requested that Plaintiff counsel articulate Plaintiff's specific issues with each specific interrogatory.

17. During the call on July 29, 2025 we requested the opportunity to address Plaintiff's additional questions with our client and Plaintiff's counsel advised that regardless of our client's position he planned to file a motion.

18. At no point prior to Plaintiff's filing of her motion pertaining to First Chicago's responses to her Requests for Production did she identify any specific issues with specific assertions of privilege listed on the privilege log that was tendered in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>August 21, 2025</u>                    <u>/s/ Donald Patrick Eckler</u>
                                                    Donald Patrick Eckler

EXHIBIT 2

**Patrick Eckler**

| | |
|---|---|
| **From:** | Quinn P. Donnelly |
| **Sent:** | Tuesday, July 29, 2025 6:41 PM |
| **To:** | kent@sinsonlawgroup.com; jcfryerlaw@gmail.com |
| **Cc:** | Patrick Eckler; Jonathan Schwartz; Lisa Flores; Lisa Williams |
| **Subject:** | Bernacchi v. First Chicago Insurance Company |

Kent,

In follow-up to our call this afternoon, this email will confirm our discussion and that you do not oppose our requested extension of time to respond to your two pending motions that are currently due on **August 1, 2025** and the motion pertaining to our interrogatory responses that you advised you plan to file tomorrow by noon. Thank you for confirming that you do not oppose our request to extend the deadline for us to file our responses to these three motions to **August 15, 2025**. We will plan to file an unopposed motion for an extension of time to respond to your pending and anticipated discovery motions tomorrow afternoon.

Our understanding was that today's call was intended to be a meet and confer pertaining to our recent responses to your interrogatories in this matter. Despite your view that meet and confer calls typically go nowhere, we were hopeful that we could work towards resolving any issues you might have without the need to seek court intervention. To that end, we requested that you articulate your issues with each specific interrogatory.

Instead, you posed six new questions that were not contained in the previously served interrogatories.

1. How does First Chicago define "adjustment of a claim?"
2. What is a reasonable amount of time after all bills and records have been received for First American to accept or deny a claim?
3. In First Chicago's Opinion does paying the claim eliminate a "vexatious and unreasonable," delay in paying a claim?
4. According to First Chicago has this claim ever been adjusted?
5. Was First required to Comply with Section 919.50 of the Illinois Administrative Code?
6. Is there any name in the privilege log that is not in the Control Group?

We requested that any supplemental interrogatories be put in writing and served on us so that we could address each new query with our client. After noting your questions, we requested time to confer with our client to respond prior to you filing another discovery motion with the Court and advised you that our client representative is currently out of town and would not be able to respond until next week.

Despite our request, and the preference that the parties resolve discovery disputes between themselves, you informed us that you view these questions as "legal issues" and that our client's response will not change your plan to file your motion tomorrow at noon.

During the call, we also asked for clarity as to what specific issues you had with our earlier response to your production requests. You emphasized that it is your position that we have the burden of proof and

1

EXHIBIT 2

beyond that did not provide any clarity as to the specific documents you are seeking or the specific assertions of privilege or objections with which you take issue.

Our preference is to resolve these disputes without the need to engage in motion practice, but we are unable to do so if you are unwilling to communicate your specific issues with our responses and interrogatories. We remain willing to work with you to narrow the issues that you have with our responses but nonetheless appreciate the unopposed extension.

Do not hesitate to contact us to discuss further so we can avoid wasting the Court's time with any issues that we can resolve through further discussions.

Best,

Quinn

**Quinn P. Donnelly**
Partner
**Freeman Mathis & Gary, LLP**

**33 N. Dearborn Avenue | Suite 1430 | Chicago, IL 60602**

D: **312-809-5826**  |  C: 773-841-1265

Email: Quinn.Donnelly@fmglaw.com

www.fmglaw.com  |  Instagram  |  Twitter  |  Facebook



AZ | CA | CO | CT | DE | FL | GA | IL | IN | KY | MA | NJ | NM | NV | NY | OH | PA | RI | TN | TX | WA

Please read this important notice and confidentiality statement

EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GINA BERNACCHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-16091 |
| | ) | |
| FIRST CHICAGO INSURANCE | ) | Judge John Robert Blakey |
| COMPANY, and CHICAGO SEVEN CAB | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

### <u>DECLARATION OF COLLEEN PESLAK</u>

Under penalty of perjury as provided by law, the undersigned certifies pursuant to 28 U.S.C. § 1746, that the following statements are true and accurate, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that the undersigned verily believes the same to be true:

1. My name is Colleen Peslak. I have personal knowledge of the facts stated in this Declaration, the basis of which is set forth more specifically below, and if called to testify to these facts, I would be competent to do so.

2. The information contained in this Declaration is based on my personal knowledge.

3. I am currently employed by First Chicago Insurance Company as the Vice President of Claims. I previously held the title of Litigation Director and during the course of this dispute my title changed.

4. Each of the following individuals, while employed by First Chicago Insurance Company acted as a decision maker who substantially influenced First Chicago Insurance's decisions and without whose opinions a final decision would not ordinarily be made:

   ▪ John Heyl
   ▪ Colleen Peslak
   ▪ Homer Nevels
   ▪ Mike Rosenstein
   ▪ Robert Kolon

EXHIBIT 3

- Mark Jatczak
- Susan Collins
- Timothy Louise
- Laura Gaughan
- Tyler Steffens
- Jean Louise
- Michael Kaper
- James Taone
- Jason Jaramillo
- Daniel Kane
- Edward Lowery
- Jennifer Baum
- Israel Tover
- Lisbeth Gutierrez
- Tracy Albanese
- Gregg Shuford
- Jonathan Walter

5. With respect to each of the below matters related to this dispute, counsel was engaged from the respective firms to represent First Chicago or its insureds:

- 2019 CH 11876 (Circuit Court of Cook County) – *Bernacchi v. First Chicago and Chicago Seven Cab* – Cynthia Ramirez and Thomas Finn, Leahy - Eisenberg & Fraenkel

- 2019 L 1513 (Circuit Court of Cook County) – *Bernacchi v. Allen, et al* – Mike Mordini, Eli Vine, and Cameron Ash - Mordini, Schwartz, & Vine (DeJuana Pierce, Chris Barrett, and Patty Amdeio – legal assistants)

- 21-cv-2533 (Northern District of Illinois) and 21-3363 (Seventh Circuit) – *Bernacchi v. First Chicago Insurance Company* - Patrick Hincks - Sullivan Hincks & Conway

6. In addition, John Heyl is a lawyer directly employed by First Chicago. Finally, Patrick Hincks acts as outside general counsel and on occasion represents the company (as he did in the prior dispute in federal court) as well as represents First Chicago insureds.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __8/21/25_____          /s/ Colleen Peslak_____
                                     Colleen Peslak